## NICHOLS v. SKELLY OIL CO.
### No. 13902.

United States Court of Appeals
Eighth Circuit.
June 13, 1949.

D. M. Cuthbertson, Fulton, Mo. (J. R. Baker, Fulton, Mo., on the brief), for appellant.

Frank C. Mann, Springfield, Mo. (Cliff. V. Peery, Kansas City, Mo., C. C. Lovell, Tulsa, Okl., and Mann, Mann, Walter & Powell, Springfield, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

█ Arthur J. Nichols brought this action against Skelly Oil Company to recover damages for negligence causing personal injuries suffered by him on May 14, 1947, when he slipped and fell from the dome of a railroad tank car of gasoline which he had started to unload. At the conclusion of plaintiff's evidence the trial court sustained the motion of defendant for directed verdict, and Nichols appeals from the judgment of dismissal entered upon the verdict so directed. The question on the appeal is whether the evidence considered in the light most favorable to the plaintiff presented a submissible case under permissible determination and application of the law of Missouri where the accident occurred.

It appears that plaintiff was, and for some years before the accident had been engaged under written contract with defendant as "bulk station agent" of defendant at Fulton, Missouri, and operated the company's "bulk plant" there. He was the only person with whom the company had any contract for the operation of the plant. In the course of that business the Alton Railroad brought gasoline in tank cars to a point on its track opposite the bulk plant and the gasoline was pumped from the cars to the plant through an unloading rack which stood firmly supported in concrete adjacent to the track. The rack had upright pipes extending somewhat higher than the tank cars, a swing pipe moving on a universal joint at the top of the upright pipe to extend over the opening in the top of the dome of the tank car, and a suction pipe to be inserted into the tank car and attached at its upper end to the swing pipe. When a tank car of gasoline for the Skelly Oil Company was spotted by the railroad at the unloading rack it was the plaintiff's duty to mount the car, break the seal, open the car by removing a cap located on the top of the dome of the car, insert the suction pipe through the opening and attach it to the swing pipe and start the machinery to pump the gasoline to the plant. On the morning of the accident Nichols, in the course of his duty, mounted upon a tank car of gasoline spotted at the unloading rack for the Skelly company and climbed from the top of the shell of the car on to the top of the dome to unfasten the cap. As he was straightening himself up, his foot slipped and he fell to the ground. He was not conscious of severe injury and very shortly after the fall returned to the top of the dome of the car. He testified that there was gasoline bubbling out between the cap and the gasket and that there was a wet spot of gasoline which had leaked out about a foot and a half square on the top of the dome in which he could see the mark where his foot had slipped in it and caused him to fall. The allegation of his complaint was that "the defendant, its agents, servants and employees had so carelessly and negligently placed the cap on said dome of said tank car that it was loose, and so loose that in moving and jostling said tank car gasoline splashed out of said dome on the surrounding portions of said tank car— and rendered the portions of said tank car, where plaintiff was obliged to work in the performance of his duties, slick, treacherous and dangerous, causing plaintiff to slip and fall from the top of said tank car to the ground." All the facts as to the relation of the Skelly company to the tank car and its gasoline content were stipulated by the parties and it appears that the Skelly company bought the ethyl gasoline from Triangle Refineries, Inc., and that company obtained it from Highland Oil Company. Under the agreement between the Triangle and the Highland companies (which were in no way affiliated with the Skelly company), Highland supplied the tank car and loaded it with their gasoline at Myrtis, Louisiana, and shipped it to Skelly at Fulton. As Skelly Oil Company was to pay the freight, Highland caused the car of gasoline to be billed in the name of Skelly Oil Company as consignor to Skelly Oil Company at Fulton as consignee, with direction

to the railroad company to draw draft on the Skelly company for the freight, but the Skelly company neither produced, processed, loaded nor shipped the gasoline and had no relation to it or the car in which it was transported except as it was the purchaser of the gasoline from the Triangle company and the consignee thereof under the bill of lading procured by Highland.

On its motion for directed verdict it was contended for the Skelly company that on the facts shown no duty was imposed on it to inspect the tank car for Nichols and that there was no evidence of negligence on its part resulting in his injury and the court so held.

■ On this appeal it is contended for Nichols that the Skelly company owed to Nichols the duty of providing him a reasonably safe place to work on top of the dome of the tank car where Nichols was required to remove the cap in order to open the car and unload it, and many cases are cited which, it is argued, sustain the contention. But we think that decision on the facts presented is ruled in Missouri by Allen v. Larabee Flour Mills Co., 328 Mo. 226, 40 S.W.2d 597, 600. In that case the consignee of a car load of wheat employed the plaintiff to unload it, and while the plaintiff was so engaged he was injured as the result of a defective condition in the car. On the appeal from judgment for the employer, the Supreme Court said, "Where a railroad company delivers and places a car loaded with freight to be unloaded by the consignee, such consignee has a right to presume that the car is in proper and safe condition unless the contrary appears without particular or technical inspection, 'and in the absence of obvious defects or knowledge of some facts or circumstances actually or constructively brought home' to him which would put an ordinarily prudent person 'on such inquiry as to lead to knowledge of a contrary condition,' the consignee is not liable for injuries resulting to his servant while working on, in or about such car in unloading it, by reason of some defective condition thereof." The court pointed out that the consignee of the

car load of wheat "exercised no control over and made no use of the car except to unload it," and stated "We have not found any case which holds that the master, being merely a consignee of freight delivered to him by railroad car for the sole purpose of unloading same, is liable to his servant for injury caused by some defective condition of the car. Upon such a state of facts the rule is that the master is not liable."

Sixteen years later in Small v. Ralston-Purina Co., 202 S.W.2d 533, the St. Louis Court of Appeals followed Allen v. Larabee Flour Mills Co., supra, in an analogous situation, declaring and applying the general rule in Missouri that a master is not liable for injuries to his servant by reason of defects in appliances or places for work which are furnished by or under the control of a third person, and the plaintiff's proof in this case is clear that the tank car which the plaintiff was undertaking to unload was "furnished" by corporations other than the Skelly Oil Company. The Alton Railroad company moved it to and from its position on its own tracks and "no use was made of it [by Skelly] except to unload it." We have not been cited to and have not found any case in Missouri overruling or in conflict with the decision of the Supreme Court of Missouri in the Allen case, and we discern no error on the part of the District Court in following and applying to this case the law of Missouri as the Supreme Court of the state there declared it.

■ The appellant has urged here, apparently for the first time, that he should be held to have a submissible case under the doctrine of res ipsa loquitur, but we think the contention is without merit. As the Skelly company never had anything to do with procuring the tank car in which the gasoline it bought was consigned to it, nor in loading the car, hauling it or spotting it, there is no rational basis upon which it could be concluded that the alleged defective condition of it, claimed to have caused plaintiff's injury, was in any wise attributable to any act or neglect of Skelly.

We find no error in the judgment and it is affirmed.